May it please the Court, Katherine Froyen from the Federal Public Defender's Office on behalf of Appellant Gene Paul Wheaton. I'd like to quickly turn the focus of this argument to the prejudice analysis of the two-pronged Strickland approach. As you know, in this case, Mr. Wheaton has alleged that his trial counsel was prejudicially ineffective for failing to call critical alibi witnesses to testify at his trial. And I think the deficient performance prong has clearly been met, and much of the evidence for that is in the record. Where the lower courts have been most concerned and where I'd like to focus most of my attention is on the prejudice analysis. Well, you had three alibi witnesses. The Court considered the claim limited to three alibi witnesses, Geneva Myers, Suzanne Ash, and Andrew Reeves. One of them is deceased? Ms. Myers is deceased. Right. So I think the Court seemed to be worried about the quality of the record that was made on prejudice, because the papers weren't signed, no declarations, no live testimony. I mean, I was why wasn't there any live testimony from the living alibi witnesses? Your Honor, there was testimony. There was live testimony from one alibi witness. That was Emery Watson. And there was some dispute in the lower courts over whether Emery Watson could be considered whether his testimony could be considered, because he was not one of the three alibi Reeves and Ash, they did not testify at the evidentiary hearing. Reeves and Ash did not testify at the evidentiary hearing. Is there any explanation for that? I mean, it seems to me that if you're putting on a case of prejudice, you bring in the alibi witnesses who you intend to present at the next trial, and they testify, here's what I would have said. Well, why didn't they testify? Your Honor, that is what the lower court was looking for, and I would encourage this Court not to adopt that rigid attest. Why didn't they testify? Well, then, all right, so they didn't testify. I don't quite understand that. But the paperwork isn't even solid. You don't have any declarations under penalty of perjury or affidavits that are signed. You have some documents that aren't signed. You have some other ones that are. I mean, it's the quality of the evidence that seems to have bothered the district court. It's not there. That's right, Your Honor. There were some issues with the declarations and affidavits. Lots of issues. They're not satisfactory. They're not sufficient. Why didn't somebody get declarations, affidavits, something that courts are familiar with, that stand up, that are under oath? Those are missing, too. So you have no live testimony, and you have no paperwork that holds up. But, Your Honor, we did have ñ there was live testimony at the evidentiary hearing, and there's actually record evidence. But what witness ever puts him at the park at the relevant time? The witness who testified at the hearing put him at the park. At the relevant time? But not at the time. Not the relevant time. Not the relevant time. And the alibi evidence was consistent throughout. The problem is, of all of these witnesses, the only person, as I read it, who would have been an alibi for the relevant time would have been, I think, Reeves, right? He's the one who says, well, he was around. He told the police ñ or the defense investigators, I understand it, that he couldn't remember the date on when any of this happened. So all we have is his letter, which comes back to Judge Trott's point. We don't have anything under oath from him, and it's inconsistent with what he said to the investigator. Or at least it's not a clear cut. So that's this shaky record you've got. I don't know what ñ even assuming Whedon was timely and relevant, what does he add? Well, Watson and ñ Not Whedon, but ñ Emory Watson. Watson, rather, yeah. Watson and Reeves taken together provide the most solid support for the alibi that Mr. Whedon presented and the most solid evidence of prejudice, though certainly not the only evidence of prejudice. Now, Reeves did not testify at the evidentiary hearing, but there is a strong record of him as an alibi witness that goes back to the very first trial, Mr. Whedon's trial, where his public defender, alternate public defender, who eventually had to conflict out of the case, had prepared the case for trial. It didn't go to trial. She declared a conflict right after the jury had been selected, but she testified at the federal evidentiary hearing, and she testified that she had interviewed Mr. Reeves, that she had him ritted out for the first trial, and she testified that her investigator, a woman by the name of Diana Dijon, had interviewed Mr. Reeves and provided her with an interview memo. Yeah, and according from ER 4546, the prosecutor pointed out that when Reeves was interviewed by a defense investigator, quote, before the first trial even began, Reeves was unable to state, quote, what the dates were that he may have had contact with Mr. Whedon. And the interview report does not include the date, March 5th. But the testimony of Emery Watson, which was presented at the evidentiary hearing, he was able to state that he remembered the picnic in Cherry Park in Long Beach taking place. So he could establish the picnic, but not cover for Whedon at the relevant time. So what you need is Whedon to establish there was, in fact, a picnic at the park and that Whedon was there for some part of the time, and then you have to rely on Reeves. He's the one that puts him there at the time that the shooting took place. That's right. And the alibi testimony did not establish that Mr. Whedon was at Cherry Park at the time of the crime, but rather that Mr. Whedon and others, including Reeves, had gone to an alternate location where they had engaged in games and had been drinking and hanging out sort of for the evening. Was there anything in the record before the district court to show that Suzanne Nash or Abdul Reeves were unavailable? There was not anything in the record before the district court to establish their unavailability. I'm always a little bit curious. The gravamen of the complaint here is that trial defense counsel in the state proceeding was inadequate, right? That's right, Your Honor. But it's curious, at least to this judge, how an office can bring that claim and then not perform adequately themselves. Why did not your office either secure the presence of Suzanne Nash and Abdul Reeves or get signed under oath declarations from them? Well, at the time that the evidentiary hearing took place, at least six years had passed since the witnesses were present in court, and the trial court did find, the trial court made a finding. I understand these witnesses were here, and I find that there's no reason why they were here on the days that they actually showed up in court on days that they weren't. You're talking about the trial now, and I think Judge Hawkins is talking about the evidentiary hearing. That's right. And what I'm trying to say is that the witnesses, that their unavailability six years later is ‑‑ I thought you just told me there was no evidence that they were unavailable. Well, but the burden on counsel to find those witnesses, the passage of time that the court can infer from the record that they were here. Did you try to find the witnesses? Did your office try to find the witnesses? Yes, we did, Your Honor. And what happened? With respect, with regard to Mr. Reeves, we had ‑‑ we were not able to locate him. He was no longer ‑‑ So he's gone, and so what you had is a declaration, and reading what the trial court said, while Petitioner provided signed letters from Myers and Reeves, they were not offered into evidence. They weren't even put in evidence. That's right. And the signed letters, and I'd like the court to consider that. So they're not in evidence. The signed letters were not offered for their truth as alibi testimony. The prejudice analysis can be made and evaluated on the testimony of Watson and the record evidence, irregardless of the declarations. Why weren't the declarations even offered in evidence? Well, the declarations were objected to by the AGs on hearsay grounds and without the live testimony of the witnesses. What were the dates on these documents? They were submitted contemporaneous with the trial. They were made at the time of the new trial motion. So shortly after the trial, trial counsel attempted to obtain a new trial by telling the court, I have these affidavits, I have these witnesses. They were here to testify on December 13th and 14th. Is there anything ‑‑ did you put anything in the record indicating your attempts to try to find Mr. Reeves and your inability to do so? I don't believe that is in the record, Your Honor. Why not? At the evidentiary hearing. Then you would argue this is what happens. This is an aggravation of what trial counsel did because now we can't even find the witnesses. This record is really deficient in so many respects. At the evidentiary hearing. The evidentiary hearing record is thin, but in determining whether or not Mr. Wheaton was prejudiced by his trial counsel's failures, it's important to look at the totality of the evidence and where the case against Mr. Wheaton, the case at trial was not strong, where it was not ironclad, the burden on Mr. Wheaton to show prejudice must be lower. And Mr. Wheaton met that burden with the live testimony of Emory Watson and the record evidence of his trial counsel. The fact that he put on the record shortly after the trial, these witnesses were here, they would have testified. And the record evidence. Reeves did testify at one point. Reeves testified at the second trial. Right. And this whole alibi thing never came up. And I think that that absolutely goes to counsel's deficient performance in this case because it is clear from the record, and in fact, at the third trial, the trial counsel, Mr. Widener, did point this out, that Mr. Widener had forgotten why he called Mr. Reeves. I think that record of deficient performance in this case has bearing on the prejudice analysis because the record shows an attorney who was not, perhaps through health or medical problems which caused his absence during trial, he was not able to follow what was going on. What do you do with Dijon? Reeves told Dijon a different story, namely that he and Petitioner went to Sheena's apartment where they stayed all night drinking until they passed out. So what do you do with Dijon? Well, that's Reeves' prior statement to Dijon, which does not conflict with Emory Watson's testimony. But it surely conflicts with what you say Reeves' testimony would have been. Well, Reeves' testimony, that is good evidence. That investigative report is good evidence of what Reeves would have testified to had he been called at trial. There is a discrepancy between that and the declaration or the letter of Reeves that was submitted in the new trial motion. But the jury could have heard his testimony at the trial even if inconsistencies had been brought out or he had been impeached with prior statements. This Court has still found that those evaluations of credibility are for a jury to make and that it's important for the jury to be given the opportunity to evaluate the evidence. Some evidence of an alibi, even if it's imperfect evidence, could have made a difference in this case where the case against Mr. Wheaton was not bolstered by physical evidence tying him to the crime and where the eyewitness identifications, which were the crux of the State's case against him, were also inconsistent and problematic. So I think the prejudice analysis can also be informed by the weakness of the State's case and by the fact that in that second trial where Mr. Reeves did not testify to an alibi due to his counsel's forgetting why he had called him to the stand, a jury hung 9-3 in favor of acquittal. And if the Court has no further questions, I'd like to reserve the remainder of my time. Breyer, you're three over, but you'll have a minute on rebuttal. Good morning. May it please the Court, Deputy Attorney General Roberta Davis for Respondent Scott Kernan. The District Court's denial of relief in this case should be affirmed for two reasons. And one is that the State Court's denial of relief is neither contrary to nor an unreasonable application of Strickland. And the second reason is that the District Court's findings, after holding a full evidentiary hearing, only bolster the State Court's findings. Are we frozen in our consideration of this matter to the record before the District Court? Yes, Your Honor, because Are you saying we cannot consider any statement or any other written recordation of what Reeves or Ash might have said? Your Honor, this Court's job is to decide whether or not the State Court's decision was unreasonable. And in light of that, we now have the District Court's reasonable factual findings after a full evidentiary hearing, at which Petitioner was given an opportunity to present competent evidence that would establish prejudice in this case. And he simply did not. Do you agree in a hypothetical case that if there is an available, ready, willing alibi witness, even though subject to cross-examination and potential impeachment, that that's worthy of consideration? I'm sorry. I missed the beginning of your question. In every case, is that the case? Do you agree in a hypothetical case? You understand the question I'm asking you is hypothetical? Yes. You understand what that means? I do. Okay. I'm sorry. Someone coughed in the audience, so I literally missed the beginning of your question. Do you agree as a general principle in a hypothetical case that the mere fact an alibi witness, a potential alibi witness, who's ready and willing to testify that their testimony might be subject to cross-examination or impeachment is not enough to discount it? No, Your Honor. I don't think that in every case that an incredible alibi ---- So the fact that Reeves could be subject to cross-examination or potential impeachment standing alone is not enough to discount the fact that he might be a potential ---- might have been a potential alibi witness. It doesn't necessarily show that this Petitioner was prejudiced, that he was available, because his testimony, even if we believe what this letter states his testimony would have been, is entirely incredible. It's completely contradictory to his statement to the investigator. To the investigator, he says, on a date uncertain, Wheaton and I went to Tashina's apartment and got drunk all night. In his letter, he says specifically on the date of the shooting, March 5, 2001, Wheaton and I went to my apartment and had a nice dinner and then played games. So if you're asking whether an incredible alibi is always better than no alibi, I would argue no. And in this case, Petitioner has failed to present any evidence that shows he was prejudiced by the failure to present this supposed alibi and what seems to be an incredible alibi defense. He's presented no evidence that shows that there actually was an alibi. And as we argued in our briefing, Watson's testimony, first of all, should not be considered, considering that the first time that Watson was even brought to light was at the evidentiary  and not in any State court proceeding. He was not raised in the State court proceedings. It was not raised in his petition for writ of habeas corpus in the Federal courts. And his – whether his – excuse me, whether Wheaton was prejudiced by his failure to testify is not even an issue that's certified for appeal. But also, even if you consider his testimony, it contradicts Reeves's letter. So to the extent that Petitioner is arguing that Watson's testimony should be used to corroborate Reeves's letter, they say this party supposedly took place at two different places. They don't actually corroborate each other. And I'd also like to note that, as Your Honors have pointed out, there's nothing in the record that establishes why the living witnesses were not called at the evidentiary hearing, or why signed declarations under penalty of perjury were not admitted into evidence. And it's Petitioner's burden to show by clear and convincing evidence that the State court's findings were unreasonable, and that simply hasn't been done. Unless there are any questions, I'd just like to emphasize in conclusion that as both the State courts and the Federal evidentiary hearings show, Petitioner has failed to show that he was prejudiced by the failure to present these three witnesses. And so therefore, the district court's holding should be affirmed. Thank you. Thank you. Anything in response? Very briefly, I'd just like to point the Court to this Circuit's decision in Alcala v. Carter as cases where courts relied on investigative reports as to what witnesses would have testified to as some evidence of an alibi that could have been presented at trial. Okay. Thank you. Thank you, Your Honor. All right. Thank you, Counsel. The case argued is submitted. And we'll go to the last case on calendar, which is United States v. Cuevas.
judges: Trott, Hawkins, Fisher